No. 24-6166
CAPITAL CASE

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

RONNIE EUGENE FUSTON,

*Petitioner-Appellant,*

v.

CHRISTE QUICK, WARDEN,
OKLAHOMA STATE PENITENTIARY,

*Respondent-Appellee.*

**REPLY BRIEF OF PETITIONER-APPELLANT
RONNIE EUGENE FUSTON**

Appeal from the United States District Court
for the Western District of Oklahoma
The Honorable Scott L. Palk
District Court No.: 21-cv-179-SLP

CALLIE HELLER, Texas Bar #24101897
Assistant Federal Public Defender

EMMA V. ROLLS, OBA #18820
First Assistant Federal Public Defender

Office of the Federal Public Defender
Western District of Oklahoma
215 Dean A. McGee, Suite 707
Oklahoma City, OK 73102
Tel. 405-609-5975
Callie_Heller@fd.org
Emma_Rolls@fd.org

COUNSEL FOR PETITIONER-APPELLANT

November 3, 2025

## **TABLE OF CONTENTS**

TABLE OF CONTENTS.............................................................................i

TABLE OF AUTHORITIES ..................................................................... ii

STATEMENT OF THE CASE....................................................................1

REPLY REGARDING PROPOSITION ONE:
THE TRIAL COURT'S FAILURE TO INSTRUCT ON A LESSER
INCLUDED OFFENSE VIOLATED MR. FUSTON'S FOURTEENTH
AMENDMENT RIGHTS. .........................................................................1

    A. The Weight of Authority Belies Respondent's Claims of Forfeiture..............1

    B. The Clearly Established Law Governing Mr. Fuston's *Beck* Claim Is
    Settled ........................................................................................5

    C. OCCA's Adjudication of Mr. Fuston's *Beck* Claim Was Unreasonable
    Under 28 U.S.C. § 2254(d)................................................................9

        1. OCCA's Adjudication Was Legally Unreasonable....................................9

        2. OCCA's Adjudication Was Factually Unreasonable ..............................24

CONCLUSION .....................................................................................27

CERTIFICATE OF DIGITAL SUBMISSION .........................................28

CERTIFICATE OF COMPLIANCE.........................................................28

CERTIFICATE OF SERVICE ................................................................29

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Beck v. Alabama*,
447 U.S. 625 (1980).................................. 1, 3, 4, 5, 6, 7, 8, 9, 10, 13, 14, 15, 16, 17, 19, 20, 21, 23, 24, 26

*Bland v. Sirmons*,
459 F.3d 999 (10th Cir. 2006) .........................................................4, 5

*Brumfield v. Cain*,
576 U.S. 305 (2015)...........................................................................26

*Campbell v. Coyle*,
260 F.3d 531 (6th Cir. 2001) ...................................................... 20, 21

*Darks v. Mullin*,
327 F.3d 1001 (10th Cir. 2003) .................................................... 2, 15

*Fish v. Kobach*,
840 F.3d 710 (10th Cir. 2016) .............................................................4

*Frederick v. Quick*,
79 F.4th 1090 (10th Cir. 2023) ..........................................................25

*Fuston v. State*,
470 P.3d 306 (2020).............................................................................13

*Gilson v. Sirmons*,
520 F.3d 1196 (10th Cir. 2008) .........................................................24

*Goodwin v. Johnson*,
632 F.3d 301 (6th Cir. 2011) ...................................................... 19, 20

*Grant v. Royal*,
886 F.3d 874 (10th Cir. 2018) ....................................... 6, 10, 16, 17

*Grant v. Trammell*,
727 F.3d 1006 (10th Cir. 2013) .........................................................15

*Grissom v. Carpenter*,
902 F.3d 1265 (10th Cir. 2018) .................................................. 12, 26

*Harrington v. Richter*,
562 U.S. 86 (2011)..............................................................................3

*Hawkins v. Mullin*,
291 F.3d 658 (10th Cir. 2002) ...........................................................3

*Hogan v. Gibson*,
197 F.3d 1297 (10th Cir. 1999) ................................... 5, 16, 17, 20, 23

*Honie v. Powell*,
58 F.4th 1173 (10th Cir. 2023) .......................................................3, 4

*Hooks v. Ward*,
184 F.3d 1206 (10th Cir. 1999) .......................................................5, 6

*Hopkins v. Reeves*,
524 U.S. 88 (1998)..............................................................................7

*Hopper v. Evans*,
456 U.S. 605 (1982)..........................................................................6, 7

*Howell v. Mississippi*,
543 U.S. 440 (2005)............................................................................8

*King v. Emmons*,
144 S. Ct. 2501 (2024)......................................................................26

*Marshall v. Rodgers*,
569 U.S. 58 (2013)..............................................................................8

*Miller-El v. Cockrell*,
537 U.S. 322 (2003)..........................................................................25

*Mitchell v. Gibson*,
262 F.3d 1036 (10th Cir. 2001) ............................................. 9, 10, 11

*Nichols v. Sullivan*,
867 F.2d 1250 (10th Cir. 1989) ..........................................................5

*Prendergast v. Clements*,
699 F.3d 1182 (10th Cir. 2012) ..........................................................4

*Robedeaux v. Gibson*,
No. 98-6021, 1999 WL 672305 (10th Cir. July 8, 1999) ...................15

*Sexton v. Beaudreaux*,
    585 U.S. 961 (2018)..............................................................................2

*State v. Campbell*,
    630 N.E.2d 339 (Ohio 1994) ...................................................... 20, 21

*State v. Goodwin*,
    703 N.E.2d 1251 (Ohio 1999) ...............................................................19

*Taylor v. Workman*,
    554 F.3d 879 (10th Cir 2009) ............................................... 12, 16, 17

*Teague v. Lane*,
    489 U.S. 288 (1989)..............................................................................8

*Thompson v. Quarterman*,
    292 F. App'x 277 (5th Cir. 2008) .......................................................18

*Threadgill v. Thaler*,
    425 F. App'x 298 (5th Cir. 2011) .......................................................18

*United States v. Johnson*,
    821 F.3d 1194 (10th Cir. 2016) ...........................................................4

*United States v. McVeigh*,
    153 F.3d 1166 (10th Cir. 1998) .......................................................5, 6

*Walker v. Lee*,
    87 F. App'x 835 (4th Cir. 2004) ........................................................21

*Wellmon v. Colorado Dep't of Corr.*,
    952 F.3d 1242 (10th Cir. 2020) ...........................................................3

*Young v. Sirmons*,
    486 F.3d 655 (10th Cir. 2007) ...........................................................15

**Statutes**

28 U.S.C. § 2254(d) .......................................................... 10, 12, 27, 28

28 U.S.C. § 2254(e) ................................................................................29

## STATEMENT OF THE CASE

Mr. Fuston preliminarily corrects an error in Respondent's Statement of the Case. *See* Response at 12.[1] Neither Respondent's cited testimony nor elsewhere in the trial transcript characterizes Mr. Rhodes as holding his daughter when he was shot. The testimony Respondent cites refers to Mr. Rhodes' son holding Mr. Rhodes' daughter following the shooting. *See* Tr. 777, 795-99.

Mr. Fuston does not offer this clarification in an attempt to diminish the senseless death Mr. Rhodes and his family suffered, but to ensure all underlying details are accurately conveyed given the fact-intensive nature of his *Beck* claim.

## REPLY REGARDING PROPOSITION ONE

**THE TRIAL COURT'S FAILURE TO INSTRUCT ON A LESSER INCLUDED OFFENSE VIOLATED MR. FUSTON'S FOURTEENTH AMENDMENT RIGHTS.**

**A.    The Weight of Authority Belies Respondent's Claims of Forfeiture.**

Mr. Fuston argued to the trial court that he should receive a lesser included offense instruction; raised a federal *Beck* claim before the Oklahoma Court of Criminal Appeals (OCCA) on direct appeal; and raised a habeas claim before the federal district court. *See* ROA I at 121-28, 121 n.75.[2] He has argued on appeal,

---

[1] All references are to CM/ECF pagination.

[2] As Mr. Fuston has laid out, *Beck v. Alabama* and its progeny require that the trial court give a lesser included offense instruction that the evidence supports. *See* ROA

respectively, that the trial court violated his right to due process in denying him his requested instruction; that OCCA's adjudication of the claim unreasonably applied the law and relied on unreasonable determinations of fact; and that the district court erred.[3] *See id*.; Opening Brief at 22-62. Respondent's parsimonious reading of the proper scope of Mr. Fuston's claim on appeal misapplies authority and is squarely foreclosed by this Court's precedent. *See* Response at 20 n.4, 20-21 36 n.11, 39-40, 59.

Respondent resorts to inapposite references to precedent from this Court and the U.S. Supreme Court. First, there is no dispute that OCCA here issued a reasoned, merits adjudication of Mr. Fuston's claim, unlike that at issue in *Sexton v. Beaudreaux*, 585 U.S. 961 (2018). There, the Court's reference to the Ninth Circuit's "consider[ing] arguments against the state court's decision that Beaudreaux never even made in his state habeas petition," *Beaudreaux*, 585 U.S. at 967-68, was related

---

I at 122. The distinction Respondent attempts to draw otherwise, Response at 35-36 n.10, is unclear.

[3] Respondent appears to conflate the standards and law governing federal courts' review of state-court adjudications and federal appellate review of federal district court decisions. *See* Response at 26 n.5. If this Court determines on de novo review that the federal district court was incorrect in its legal analysis, this Court will reverse the erroneous lower court. *See* Opening Brief at 20-21 (laying out standards of review); *see also Darks v. Mullin*, 327 F.3d 1001, 1007 (10th Cir. 2003) ("We apply these [appellate review] standards to assess whether the district court correctly analyzed each of the issues.").

only to whether the appellate court properly applied *Harrington v. Richter*, 562 U.S. 86 (2011), to supply potential reasons for the state court's unreasoned denial.

Respondent's reliance on *Wellmon v. Colorado Dep't of Corr.*, 952 F.3d 1242 (10th Cir. 2020), Response at 21, 40, 43 n.16, fares no better. In *Wellmon*, 952 F.3d at 1248-50, this Court described a state-court argument of invalid waiver of counsel that had transformed to a habeas argument regarding counsel's previously unpresented conflicts. *Wellmon* specified the "*context of this case* demands that we limit our review to the arguments Petitioner presented and argued to the CCA." (emphasis added) (citing *Hawkins v. Mullin*, 291 F.3d 658, 668 (10th Cir. 2002)). *Hawkins*, in turn, involved a petitioner who had "shifted the basis of his ineffective-assistance argument from the trial court's actions to that of his defense attorney" and thus "never sought to develop, in any state-court proceeding, the factual basis necessary to resolve his current claim." 291 F.3d at 669-70. Such a shift fails to "insure[] that a federal habeas claim will be accompanied by a complete factual record," *id*. at 669—not at issue here.

Here, the "factual basis" of Mr. Fuston's claim remains the various pieces of trial evidence that could have supported a lesser included offense instruction, the denial of which violated his right to due process under *Beck*. This "theor[y]—as opposed to the overarching claim[] or legal rubric[] that provide the foundation for [it]—[is] what matters." *Honie v. Powell*, 58 F.4th 1173, 1186 (10th Cir. 2023)

(quoting *Fish v. Kobach*, 840 F.3d 710, 730 (10th Cir. 2016)). *Honie* also belies Respondent's insistence that even citation to case law must identically mirror that briefed previously. *See* Response at 36 n.11. "The State can't preclude [Mr. Fuston] from relying on [these cases] without at least citing authority barring parties from bolstering established arguments with additional reasoning and authority on appeal." *Honie*, 58 F.4th at 1185.[4]

    *Honie* builds upon decades of Circuit precedent that Respondent ignores. *See* 58 F.4th at 1185 (quoting *United States v. Johnson*, 821 F.3d 1194, 1199 (10th Cir. 2016)) ("Once a federal claim is properly presented, a party can make any argument in support of that claim; parties are not limited to the precise arguments they made below."); *Prendergast v. Clements*, 699 F.3d 1182, 1184 (10th Cir. 2012) (internal citation and quotation marks omitted) ("For a federal court to consider a federal constitutional claim in an application for habeas, the claim must be fairly presented in the state courts in order to give state courts the opportunity to pass upon and correct alleged violations of its prisoners' federal rights.") (internal citation and quotation marks omitted); *Bland v. Sirmons*, 459 F.3d 999, 1011 (10th Cir. 2006) (internal citation and quotation marks omitted) ("Fair presentation means that the

---

[4] Respondent also takes an incorrectly broad view of Mr. Fuston's "claim," which is a due process violation under *Beck v. Alabama*, 447 U.S. 625 (1980) and its progeny, and is not the underlying case law, record evidence, and facts that support the claim. *See* Response at 43 nn.15-16.

petitioner has raised the substance of the claim in state court" and "cannot assert entirely different arguments from those raised before the state court."); *Nichols v. Sullivan*, 867 F.2d 1250, 1252 (10th Cir. 1989) (internal citation and quotation marks omitted) ("A petitioner need not "invoke talismanic language" or "cite book and verse of the constitution.").

## B.    The Clearly Established Law Governing Mr. Fuston's *Beck* Claim Is Settled.

Respondent recycles a long-rejected argument to convince this Court that Mr. Fuston's *Beck* claim fails for lack of clearly established law. Flatly contradicting the clear precedent of this Court, Respondent proffers *Beck* "is not clearly established with respect to non-mandatory death penalty scheme, like the one in Oklahoma." Response at 33. But as even Respondent concedes, *id.*, in *Hogan v. Gibson*, 197 F.3d 1297, 1304 (10th Cir. 1999), this Court explicitly rejected Respondent's precise argument, even under the constraints of AEDPA. *See also Hooks v. Ward*, 184 F.3d 1206, 1227 (10th Cir. 1999) (holding under de novo review that "a defendant in a capital case [is entitled] to a lesser included instruction when the evidence warrants it, notwithstanding the fact that the jury may retain discretion to issue a penalty less than death").[5]

---

[5] Respondent cites *United States v. McVeigh*, 153 F.3d 1166 (10th Cir. 1998), wherein this Court noted in dicta that *McVeigh* was distinguishable from *Beck* because McVeigh's jury had the opportunity to reject the death penalty at the sentencing phase. Response at 33 n.8. Respondent begrudgingly concedes that the

Nevertheless, Respondent continues to urge this Court to disregard its precedent. Respondent's recalcitrance ignores that this Court is "bound in habeas cases, like any other, by [its] controlling precedent's prior interpretation of Supreme Court caselaw until such an interpretation is overruled by an en banc proceeding of our court or subsequent Supreme Court precedent." *Grant v. Royal*, 886 F.3d 874, 944 n.24 (10th Cir. 2018). Clearly, this Court has repeatedly and unequivocally applied a *Beck* analysis to Oklahoma's death penalty scheme, directly contradicting Respondent's position.[6]

Respondent's reliance on post-*Beck* Supreme Court precedent fares no better. Respondent first cites *Hopper v. Evans*, 456 U.S. 605 (1982), to prop up her argument that *Beck* is not clearly established law applicable to Mr. Fuston's case. Response at 34. But even a cursory reading of *Evans* reveals it does not support

---

*Hooks* Court "disapproved this statement," *id.*, but omits *why* this Court disavowed the dicta of *McVeigh* in *Hooks*: "The subsequent language in *McVeigh* pointing out a distinction between McVeigh's claim for a lesser included instruction and the defendant's claim for a lesser included instruction in *Beck* was not necessarily dispositive, nor was it necessary once it was concluded that the other offenses on which McVeigh wanted the jury instructed were not lesser included offenses." *Hooks*, 184 F.3d at 1226. What's more, prior to *McVeigh*, this Court "had consistently applied a *Beck* analysis in situations where conviction of a capital offense did not automatically result in the death penalty." *Id.*

[6] Further, Respondent cites no other circuit precedent that endorses her parsimonious reading of *Beck*. After an exhaustive search, Mr. Fuston could find no circuit law adopting the position that *Beck* is strictly limited to mandatory death penalty schemes.

Respondent's interpretation. In *Evans*, which addressed the Alabama death penalty scheme as did *Beck*, the Court simply reinforced the holding of *Beck*: that due process requires a lesser included offense instruction be given *when the evidence warrants such an instruction*. *Evans*, 456 U.S. at 611. Ultimately, the Court concluded that the evidence, in a crime where the petitioner shot a pawnshop owner in the back as he crawled away during a robbery, *id.* at 606, amounted to a "curious-even cynical-new version of the claim of self-defense" and provided no "evidentiary basis to support a conviction of a lesser included offense." *Id.* at 612. *Evans* mentions nothing about limiting application of *Beck* to mandatory death penalty schemes.

Next, Respondent cites *Hopkins v. Reeves*, 524 U.S. 88 (1998) in support of her argument that *Beck* does not apply to Oklahoma. Response at 34. But again, *Reeves* does nothing more than reinforce the holding of *Beck*. In *Reeves*, the Court unremarkably held that no violation of *Beck* occurs when a trial court refuses to instruct on an offense that the state's highest court had previously held not to be a lesser included offense of the charged offense. *Id.* at 96-97. The Court ultimately found that the circuit court overread the holding of *Beck* by requiring "in effect that States *create* lesser included offenses to all capital crimes, by requiring that an instruction be given on some other offense . . . when no lesser included offense exists." *Id.* at 97 (emphasis added). Again, *Reeves* does not endorse the position that *Beck* is inapplicable to nonmandatory death penalty regimes.

Finally, Respondent relies on *Howell v. Mississippi*, 543 U.S. 440, 445 (2005) (per curiam), Response at 34, a case in which the Court dismissed the writ of certiorari as improvidently granted because the petitioner failed to present his claim in state court as one arising under federal law. In state court, the petitioner cited only state law in support of his claim that the trial court erred by not giving a lesser included offense instruction. Therefore, the Supreme Court did not reach the merits of petitioner's constitutional claim. *Id.* at 443. As is the case with denials of certiorari, this opinion has no precedential value. *See generally Teague v. Lane*, 489 U.S. 288, 296 (1989) (holding that a "denial of a writ of certiorari imports no expression of opinion upon the merits of the case").

As this Court has repeatedly recognized, the clearly established law of *Beck* indeed applies to Oklahoma's death penalty scheme. *See* Opening Brief at 21-27 (surveying this Court's precedent applying *Beck* to Oklahoma capital cases). And, of course, "an appellate panel may, in accordance with its usual law-of-the circuit procedures, look to circuit precedent to ascertain whether it has already held that the particular point in issue is clearly established by Supreme Court precedent." *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013) (per curiam). Respondent's arguments otherwise are without merit.

**C.    OCCA's Adjudication of Mr. Fuston's *Beck* Claim Was Unreasonable Under 28 U.S.C. § 2254(d).**

**1.    OCCA's Adjudication Was Legally Unreasonable.**

Mr. Fuston explained at length the basis for OCCA's unreasonable application of *Beck*, Opening Brief at 36-39, breaking down the adjudication sentence by sentence and arguing that the state court's "lone, cursory reference to reviewing the record for evidence of second-degree murder," *id*. at 37, did not transform an opinion focused on the evidence supporting a first-degree murder conviction into one in line with *Beck*'s dictate. Instead, OCCA's opinion demonstrated that it proceeded based on evidentiary support for first-degree murder, an approach this Court has repeatedly found not entitled to deference under 28 U.S.C. § 2254(d)(1).

Respondent makes an unavailing reference to *Mitchell v. Gibson*, 262 F.3d 1036, 1050 (10th Cir. 2001), in an attempt to defend OCCA's adjudication, Response at 38 & 38 n.13, but *Mitchell* only illustrates why OCCA's opinion was unreasonable here. Respondent does not acknowledge or distinguish Mr. Fuston's reliance on *Mitchell*, Opening Brief at 42-43, and also fails to engage with *Mitchell*'s specifics, simply citing *Mitchell* as "requiring that reviewing courts assess whether the evidence at trial, **viewed as a whole**, warranted the lesser-included instruction." Response at 38 n.13 (emphasis in Response). However, this holding came in the course of this Court's de novo review, after finding OCCA's adjudication disentitled to deference for appearing to exclude a piece of evidence from its *Beck* analysis. *See*

Opening Brief at 42-43. There, as here, OCCA had not explicitly discounted this evidence, but the entirety of its opinion made the exclusion clear. *See Mitchell*, 262 F.3d at 1050 (referring to what the state court opinion "fairly read" "appears to hold" and its "implicit holding").

While this Court on habeas review "properly eschew[s] the rule of strict English teacher," its reasonableness "inquiry relates to the overall substance of the state court's analysis and the conclusion it thereafter makes," *Grant v. Royal*, 886 F.3d 874, 905-906 (10th Cir. 2018). The overall substance and conclusion of OCCA's *Beck* adjudication here, while providing passing reference to "reviewing the record" for evidence supporting a second-degree murder instruction, conveyed OCCA's focus on evidence of first-degree murder. As in *Mitchell*, then, this Court should find the § 2254(d)(1) "standard, although demanding, is met here." 262 F.3d at 1050.

Respondent again points to *Mitchell*'s "as a whole" language in the course of decrying the record evidence upon which Mr. Fuston relies as mere "speculation." Response at 42; *see also id*. at 40, 42, 44, 45. Each invocation of "speculation" is misguided. Respondent at the outset asserts that, aside from "purported evidence which he speculates could have supported a second-degree murder instruction," Mr. Fuston "relies largely on an inference from a singular [sic] piece of evidence, viewed

in isolation,"[7] referring to the evidence of the "short period between when the door was kicked in and when he started shooting." *Id*. at 40. Respondent's first retort to this argument misappropriates the record. *See* Response at 40-41 (claiming "[t]he transcript does not fully bear out" that the shots were fired simultaneously with the door being kicked in because the crime scene investigator answered affirmatively the prosecutor's question, "[T]he fact that he is being stopped almost immediately upon being alerted to something, would that indicate that the shooting came almost simultaneously or immediately after the door was kicked?").

This line of questioning does not demonstrate that the prosecutor was attempting to draw the distinction between "almost simultaneous" and "immediately after," Tr. 953, that the Respondent appears to suggest; rather, the prosecutor offers two descriptors for the shooting's mechanics. Throughout the trial, the prosecutors made similar, interchangeable references. *See, e.g.,* Tr. 615 ("**[I]mmediately after** that door was kicked, [] shots were **immediately** fired."); 930-31 (to show Mr. Fuston could have been firing the gun, even if he was not the one kicking the door in, as the evidence could not pinpoint the latter: "Q: is it possible that an individual with a smaller shoe that could have been with the defendant would have been kicking the door **while** he was firing the gun? A: It's a possibility, ma'am." ); 1655 ("**As soon as** the door is kicked in five shots are fired[.]") (emphases added).

---

[7] This piece of evidence is not viewed in isolation, as discussed *supra*, Section I(A).

Respondent's spurious controversy leads to her second retort, which, ironically, relies on speculation. *See* Response at 41 ("Mr. Rhodes was falling asleep when the door was kicked so [] his reaction might have been slower than if he had been fully awake."). The transcript citation Respondent cites for this non sequitur simply provides that Mr. Rhodes had been falling asleep. Tr. 795.

And the imprecise language of Respondent's third retort transposes an incorrect legal standard. *See* Response at 41 ("There is, therefore, no evidence that Petitioner did not intentionally, rather than recklessly, shoot at Mr. Rhodes."). Mr. Fuston does not need to show he did not intentionally *shoot* at someone, but that there is evidence that could support a verdict that he did not intend to *kill*. *See Taylor v. Workman*, 554 F.3d 879, 891(10th Cir 2009) (emphasis in original) ("Even if the jury believed that Mr. Taylor intentionally shot at Mr. Sauer—indeed, even if the jury believed that Mr. Taylor was intentionally seeking to *harm* him—it could have believed his testimony and concluded that Mr. Taylor had no intent *to kill* him."). *Grissom v. Carpenter*, 902 F.3d 1265, 1290-91 (10th Cir. 2018), *see* Response at 42, where the petitioner wrestled with, shot, and injured another, surviving victim, before following the deceased victim through the house and fatally shooting her twice in the head at close range "despite her pleas for mercy," bears no resemblance to this case and provides no help to Respondent here.

Respondent attempts to paint the other record facts as controverted by calling them "inaccurate and irrelevant," Response at 43, but her arguments fall flat. Respondent first conflates evidence and speculation. While this Court's *Beck* precedents make clear that a *petitioner's* speculative arguments cannot anchor a winning *Beck* claim, this has nothing to do with hedging language used by a *State witness at trial*. The State's star witness—and source of the only non-circumstantial evidence against Mr. Fuston—using the words "I guess" in the course of testifying about the plan to fight Dillard, *see* Response at 43-44, does not transform this evidence into speculation or make his testimony controverted.

Next, Respondent defends OCCA's incorrect statement of the number of bullets that struck Mr. Rhodes. Response at 44. Again, in a case where the mechanics of the shooting play a large role, erroneous record recitations, whether by Respondent or OCCA, matter. OCCA found:

> Appellant kicked in the front door with the intention of shooting to kill Dillard and anyone else inside that house. The decedent just so happened to be sitting on the couch near the front door. Appellant fired at least five (5) times from close range, striking the decedent three (3) times in the chest, shoulder and leg.

*Fuston v. State*, 470 P.3d 306 (2020). These three sentences contain multiple inaccuracies. No record evidence showed Mr. Fuston kicked in the front door, something the trial prosecutors repeatedly concede and try to account for. *See, e.g.*, Tr. 930-31; 1678-79. And the medical examiner testified to "a fatal shot which is the

path through the -- here, left shoulder going into the chest and cavity which is through the second rib broken and get into lung," Tr. 1379, not two separate bullet entrances into Mr. Rhodes' chest and shoulder as OCCA recounts.

Respondent nonetheless simply repeats OCCA's unreasonable focus on the support for a first-degree murder conviction, along the way asserting facts irrelevant to the inquiry of intention to kill (cell location data used at trial to show Mr. Fuston was at the scene, Response at 48); facts drawn from OCCA's adjudication but missing from or belied by the record (that Mr. Fuston met with those fighting with Dillard to "formulate a plan" to kill her, Response at 48; *but see* Tr. 1024, 1026, 1040-41 (Butler testifying to plan to fight Dillard)); and a conclusion divorced from Mr. Fuston's pleading ("Petitioner does not attempt to rebut, with facts from the record, this finding by the OCCA that Petitioner planned to kill at the Rhodes home." Response at 49; *but see* Opening Brief at 39-45, 59-60 (Mr. Fuston rebutting OCCA's findings with facts from the record)). OCCA unreasonably applied *Beck*, and Respondent variously replicates this reasoning, is unresponsive to Mr. Fuston's arguments, and uses unsound comparisons and characterizations.

Mr. Fuston's record facts are not speculation and his case is distinct from those where this Court denied *Beck* relief on this basis, as Mr. Fuston has already argued.[8]

---

[8] Mr. Fuston corrects a scrivener's error in that portion of his Opening Brief to the extent it detracts from his argument. Mr. Fuston introduced "four cases [where] this Court deferred to OCCA's adjudications of *Beck* claims or otherwise denied *Beck*

*See* Opening Brief at 40-54. Respondent nonetheless attempts to bolster her "speculation" argument with inapposite comparisons to these cases. *See* Response at 45 (citing *Darks v. Mullin*, 327 F.3d 1001, 1011 (10th Cir. 2003), where the speculative showing of provocation to support heat-of-passion manslaughter "involve[d] facts that are not in evidence"[9]); 46 (citing *Robedeaux v. Gibson*, No. 98-6021, 1999 WL 672305, at *5-7 (10th Cir. July 8, 1999) (unpublished), where there was no evidence of a domestic dispute the night of the murder to support either the provocation element of manslaughter or second-degree murder); 47 (citing *Grant v. Trammell*, 727 F.3d 1006, 1014 (10th Cir. 2013), where the only argument against intent was the impact of "mental infirmities that rendered him incapable of forming an intent to kill, [but] his own expert refused to say Mr. Grant couldn't understand right from wrong"); 49 (citing *Young v. Sirmons*, 486 F.3d 655, 671-72 (10th Cir. 2007), where the surviving victim testimony foreclosed one of Young's *Beck* contentions, that his co-defendant could have been the sole triggerperson,[10] and the

---

relief where, unlike in Mr. Fuston's case, the record contained no evidence, or only disputed evidence, to support lack of intent." Opening Brief at 48. However, he went on to discuss seven cases fitting this category. *See id*. at 48-51.

[9] Respondent states that this Court conducted de novo review in *Darks*, Response at 45, and elsewhere incorrectly characterizes *Darks* as "affirming rejection of manslaughter instruction by the OCCA," Response at 20, but fails to acknowledge that *Darks* was one of the many cases where this Court found OCCA's *Beck* adjudication was not entitled to § 2254(d) deference. *See* Opening Brief at 31-32.

[10] Respondent appears to miss this basic distinction between the *Beck* claim at issue in *Young* and Mr. Fuston's claim, which does not rest on any argument that Mr.

ballistics evidence foreclosed Young's other *Beck* contention, that he fled without firing).

Here, unlike in those cases, Mr. Fuston's claim rests on record evidence, offered by the State at his trial. *Cf. Taylor*, 554 F.3d at 891 ("[A] reasonable jury*, hearing the same evidence heard by the trial judge*, could [] have found Mr. [Fuston] guilty of second degree murder."). Respondent thus invades the province of the jury and subverts *Beck* by, like OCCA, suggesting the existence of evidence supporting a first-degree murder conviction means a second-degree murder conviction was impossible.

Respondent does not engage with Mr. Fuston's distinctions between his and the above cases, except to assert that Mr. Fuston "relies heavily on previous cases in which this Court has determined that the OCCA did not properly apply *Beck*." Response at 36. But as this Court has repeatedly noted, "in reviewing habeas petitions, we often look for guidance in the Tenth Circuit's interpretation of Supreme Court cases." *Grant*, 886 F.3d at 944 n.24.[11] Respondent ignores this language from

---

Fuston was not the triggerperson. Respondent does not explain why a citation to *Young* to support that "subsequent testing confirmed that it was Petitioner's gun that fired all five shots," Response at 49, and a subsequent segue into discussion of the cell tower and ballistics forensic evidence supporting Mr. Fuston's involvement in the crime, *id*. at 50, have any relevance to the *Beck* inquiry in this case.

[11] In *Campbell v. Coyle*, 260 F.3d 531, 545 (6th Cir. 2001), which Respondent discusses at length, Response at 53-54, the Sixth Circuit similarly looks to circuit-level *Beck* interpretations. *Campbell* focused on this Court's decision in *Hogan v. Gibson*, 197 F.3d 1297 (10th Cir. 1999), as the Sixth Circuit at that time could find

*Grant* while going on to misapply language in the Court's next *Grant* footnote: "[T]he OCCA's previous cases have no bearing on this case so long as the OCCA did apply the proper standard here. *Cf.* (*Donald*) *Grant v. Royal*, 886 F.3d 874, 947 n.25 (10th Cir. 2018) (any "purported inconsistency" in the OCCA's cases is "inapposite")." Response at 36. Respondent asserts *Grant*'s holding renders "irrelevant" "other OCCA cases involving lesser offense [sic] instructions." *Id*. at 36 n.12. First, this Court's *Beck* jurisprudence, which, in the AEDPA context, inevitably involves OCCA's applications of *Beck*, inarguably bears on this case. *Grant* does not instruct otherwise, and Mr. Fuston did not point out any "purported inconsistency" in OCCA's *Beck* holdings. Instead, Mr. Fuston contrasted his case with the facts of capital trials that proceeded with a lesser included offense instruction and with the facts of Oklahoma second-degree murder cases, Opening Brief at 46-47—*just as this Court has*. *See id*. at 47 (citing *Taylor*, 554 F.3d at 891; *Hogan*, 197 F.3d at 1309).

The *Beck* adjudications from other circuits to which Respondent points this Court, Response at 51-56, are similarly distinct from Mr. Fuston's case in the facts of the crimes, nature of the evidence relied upon by the petitioners, and decision-

---

"only one post-AEDPA case in which a habeas petition was granted based on *Beck*." *Campbell*, 260 F.3d at 545. That number in this Circuit has grown to six, even under AEDPA's demanding standard. *See* Opening Brief at 32-25.

making by the state courts. These features of each case as compared to Mr. Fuston's warrant close examination.

In *Threadgill v. Thaler*, 425 F. App'x 298, 305-306 (5th Cir. 2011), the Fifth Circuit found trial counsel was not ineffective for failing to request a felony murder instruction in a carjacking murder conviction where the "asserted facts either are not supported by the record" (the "misleading characterization" of only shooting the victim in the arm, when the bullet moved through to his chest; the assertion that Threadgill did not see the victim reclining in the back seat, which the surviving victim's testimony denied), "or else fail to support a finding that Threadgill . . . lacked the intent to kill McDonald" (that Threadgill did not shoot another passenger in the car; that he removed the dying victim from the car before driving away).[12] *Thompson v. Quarterman*, 292 F. App'x 277, 295 (5th Cir. 2008) (unpublished), where the Fifth Circuit also found trial counsel was not ineffective for failing to request a felony murder instruction, is inapposite as well. There, trial counsel had supplied the State an affidavit explaining that he strategically did not request such instruction where his client had beaten and shot in the stomach and neck at close range a surviving store clerk, and his accomplice fired the fatal shot killing the

---

[12] Respondent relies on *Threadgill*'s "scintilla of evidence" and "natural consequence" language, Response at 55, but these are terms of art referring to specific Texas legal standards that are not applicable here. 425 F. App'x at 304-305.

victim, to keep out evidence of his client's similar conduct across a robbery-murder spree.[13]

In *Goodwin v. Johnson*, 632 F.3d 301, 317-18 (6th Cir. 2011), the Sixth Circuit denied the state court had unreasonably applied *Beck* in denying trial counsel was ineffective for failing to request an involuntary manslaughter instruction. "After considering the paltry evidence held up as warranting a finding that the killing of [victim] was not intentional, the Ohio Supreme Court held that '[u]nder any reasonable view, the killing was done with purpose.'" *Id.* at 317 (quoting *State v. Goodwin*, 703 N.E.2d 1251, 1265 (Ohio 1999)). The "paltry evidence" the state court considered in support of the neglected request—in a case where the petitioner "fired a shot at point blank range into [the] head" of a store clerk who "did not resist, cause panic, or cause confusion" and "had his hands up" during a robbery—included the petitioner's "statements that he 'didn't mean to' shoot [victim], that the 'gun just went off,' and that he had been drinking gin the morning of the robbery." *Goodwin*, 703 N.E.2d at 1265; *see also id.* at 1263 (in rejecting evidence insufficiency claim, noting that petitioner had "placed his .357 Magnum revolver to the forehead of a cooperative and unresisting victim who at that moment was standing with his arms

---

[13] *Thompson* pointed out that Texas law allows a capital, rather than felony, murder conviction under certain conditions of accomplice or conspirator liability. 292 F. App'x at 294.

raised above his head" and "did not flee the store after" but "placed the gun to the head of the other clerk and continued robbing the store").

The *Goodwin* involuntary manslaughter evidence, which was explicitly discussed by the state court, unlike in OCCA's adjudication of Mr. Fuston's claim, thus involved "purported, controverted evidence of intoxication or some other diminished mental state," Opening Brief at 51 (discussing category into which several of this Court's precedents denying *Beck* relief fall), as well as "self-serving statements," *Hogan v. Gibson*, 197 F.3d 1297, 1310 (10th Cir. 1999) (internal quotation marks omitted) that did not also serve as "the centerpiece of the government's case and [] the only account in the record of the murder itself." *Id.*; *see also* Opening Brief at 44, 60. The first-degree murder evidence involved a gun placed against the victim's forehead, before being placed against the forehead of a surviving witness. *Goodwin* is nothing like this case.

And in *Campbell v. Coyle*, 260 F.3d 531, 541-43 (6th Cir. 2001), the Sixth Circuit found the state court did not apply *Beck* unreasonably in a case where the trial court failed to provide an involuntary manslaughter instruction. The Ohio Supreme Court's opinion bears no resemblance to that of OCCA here; as Mr. Fuston laid out, the latter proceeded only based on the evidence supporting a first-degree murder conviction, aside from a stray, perfunctory sentence otherwise. *See* Opening Brief at 36-39. *State v. Campbell*, 630 N.E.2d 339, 349-50 (Ohio 1994), in contrast,

reviewed the petitioner's two arguments, rejecting one on legal grounds (petitioner's use of a knife he found in the victim's house to stab victim five times, after allegedly entering the home unarmed, did not affect intentionality during the stabbing, as prior calculation and design were irrelevant) and the other as factually refuted (the evidence did not support that the victim was killed in a struggle over the knife, as the coroner only identified one of the five stab wounds as defensive). *See also id*. at 343-44 (describing the five stab wounds). The Sixth Circuit concluded that

> A decision as to whether a *Beck* instruction is required is a fact-specific inquiry in which a *court must determine whether there were sufficient facts for a reasonable jury to conclude that such an intent did not exist*. That was precisely the inquiry made by the Ohio court. Indeed, the core conclusion reached by the Ohio Supreme Court was that "the number and location of his victim's wounds would compel any reasonable trier of fact to find intent to kill." [internal citation omitted]. Campbell has *produced nothing from the case law or the record that indicates such a conclusion was unreasonable*.

*Campbell*, 260 F.3d at 545 (emphases added). Here, Mr. Fuston has produced ample case law and record facts indicating OCCA's decision-making and conclusion were unreasonable and that a reasonable jury could have concluded intent did not exist.

Finally, in *Walker v. Lee*, 87 F. App'x 835, 838-40 (4th Cir. 2004) (unpublished), the Fourth Circuit found the trial court[14] had not unreasonably applied *Beck* in failing to provide an involuntary manslaughter instruction. A

---

[14] *Walker* examined whether the trial court's decision, rather than that of the appellate court, was unreasonable. *See id*. at 840.

comparison between the *Walker* trial evidence and that of Mr. Fuston's trial only underscores the constitutional necessity of a lesser included offense instruction in Mr. Fuston's case:

| Walker | Fuston |
|---|---|
| "Every one of the four witnesses to the events preceding the murder . . . testified that *Walker instructed [witness] to lure [victim] into her apartment and keep him there*." <br><br>"[Witness] witnessed Walker pull out a gun and put a clip in it before departing for [witness's] apartment, where the murder took place, and both [other witnesses] *heard Walker expressly say that he was going to kill [victim]*." <br><br>"[Witness] testified that he himself understood and intended that *he and his companions, including Walker, were going to [witness's] apartment to kill [victim]*." 87 F. App'x at 839 (emphases added). | The single State's witness to the events preceding the murder, Brian Butler, testified that he and Mr. Fuston went to Oklahoma City in response to Mr. Fuston's friends' call regarding a fight, and that they got back on the highway after they all drove around a different part of Oklahoma City to go to Dillard's home for "another fight." Opening Brief at 14-15. |
| "[A]ll of the witnesses agreed that the murder itself was a prolonged crime, with [victim] slowly dying from *various wounds that included throat-slashings and bullets to the body, leaving little room for the argument that his death was unintended*." <br><br>"[A]ll the witnesses testified to Walker's participation in the clean up of the murder scene and the disposal of the body." 87 F. App'x at 839. | The shooting was "almost simultaneous" with the door being kicked in. Opening Brief at 19, 26. <br><br>Brian Butler testified that another participant, not Mr. Fuston, said after the shooting, "they were supposed to kill everyone in the house." Opening Brief at 41. |

| | |
|---|---|
| "Walker argues that [witness's] testimony that Walker said that his friends were 'gonna beat [victim] up' undermined the testimony of [other witnesses] that Walker expressed an intent to *kill* [victim] and therefore created a conflict in the evidence on intent. [Witness's] testimony, however, does not indicate that Walker did not intend to kill [victim], and the North Carolina Supreme Court expressly found no conflict in the evidence that Walker deliberately intended to kill [victim]." | The evidence showed a series of fights between Dillard and Mr. Fuston's friends over the phone and internet, escalating into rocks thrown through Dillard's window and Dillard's child's father shooting into a crowd that included Mr. Fuston's friends. Opening Brief at 12-14. |
| "Rather, *the evidence must be taken that Walker intended both to beat up [victim] and to kill him. And indeed the evidence supports the finding that Walker did just that. Walker and [witnesses] beat Davidson with a hammer, and then they killed him. Rather than conflict with the testimony of [witnesses], [other witness's] testimony simply elaborates on Walker's intent and confirms exactly what happened.*" 87 F. App'x at 839-40 (emphasis added). | Brian Butler testified that he and Mr. Fuston went to Oklahoma City and later to Dillard's home in response to discussions of previous and planned fights. Opening Brief at 14-15. |

Respondent claims that, as in those cases, here the "minor conflicts," "conflicting testimony," and "alleged inconsistencies" in evidence of a plot to kill Mr. Rhodes' niece and of carrying that plot out cannot "displace" or "negate" evidence of first-degree murder. Response at 52. But *Beck* does not require this of Mr. Fuston, as "the sufficiency of the evidence of the greater offense is distinct from

the *Beck* inquiry into whether the evidence might allow a jury to acquit a defendant of the greater of the offenses and convict him or her of the lesser." *Hogan*, 197 F.3d at 1035. Mr. Fuston does not have to prove or disprove the sufficiency of the first-degree murder evidence or otherwise "negate" or "displace" it. A reasonable application of *Beck* reviews the evidence of second-degree murder to determine if it might have allowed his jury to convict him of that offense while thereby acquitting him of first-degree murder. Mr. Fuston has met this standard.

### 2.    OCCA's Adjudication Was Factually Unreasonable.

"Petitioner appears to believe" Respondent is "arguing that a habeas petitioner may never rely on § 2254(d)(2) in a *Beck* claim," Response at 56, because, although Respondent omitted entirely any 28 U.S.C. § 2254(d)(2) response in answering Mr. Fuston's Motion for Certificate of Appealability, Respondent's habeas answer cited *Gilson v. Sirmons*, 520 F.3d 1196, 1233 (10th Cir. 2008) for the proposition that "Section 2254(d)(1) applies to questions of law and mixed questions of law and fact," ROA I 586. She provides the same in her Response before this Court, Response at 57, before going on to "agree[] with Petitioner that this statement was dicta and not binding on this Court," *id*., and then reaching a conclusion unmoored from the previous sentence: "Accordingly, Petitioner's argument regarding the OCCA's ultimate conclusion is not reviewable under § 2254(d)(2)." Mr. Fuston continues to assert that OCCA based its adjudication of Mr. Fuston's *Beck* claim on

unreasonable determinations of fact under § 2254(d)(2) and that *Gilson* does not preclude this Court from finding the same.

Respondent goes on to argue, "The same [that Petitioner's argument regarding the OCCA's ultimate conclusion is not reviewable under § 2254(d)(2)] is true of Petitioner's argument that OCCA omitted certain facts," citing *Frederick v. Quick*, 79 F.4th 1090, 1109 n.8 (10th Cir. 2023). Response at 57. But the cited language is unrelated to OCCA's omission of key facts from its adjudication. *See Frederick*, 79 F.4th at 1109 n.8 (noting one of petitioner's arguments regarded OCCA finding that was only in its direct appeal adjudication, not in the post-conviction opinion at issue; other argument was regarding "frailties in the State's case"). Instead, the *Frederick* dissent speaks to why state court distortion of key facts, whether by omission from the analysis, misapprehension, or misstatement, can lead to an unreasonable determination under § 2254(d)(2): "The input was wrong, so the outcome was distorted." 79 F.4th at 1152 (Rossman, J., dissenting).[15]

---

[15] Respondent also relies on *Frederick* to put forth a statement of governing standards, stating, "It is the petitioner's burden to show by clear and convincing evidence that the state court 'plainly misapprehended or misstated the record,' and that the 'misapprehension goes to a material factual issue that is central to the petitioner's claim." Response at 58. Though Mr. Fuston can meet any "clear and convincing" standard with his record evidence, which consists of facts from the State's case, Respondent impermissibly collapses the § 2254(d)(2) and § 2254(e)(1) burdens. *See Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) ("It was incorrect for the Court of Appeals, when looking at the merits, to merge the independent requirements of §§ 2254(d)(2) and (e)(1). AEDPA does not require petitioner to

And, while Mr. Fuston quoted another dissenting opinion in his Opening Brief for its succinct expression of the § 2254(d)(2) problem where a state court disregards "highly relevant," "highly salient" facts, Opening Brief at 60-61 (quoting *King v. Emmons*, 144 S. Ct. 2501, 2504 (2024) (mem.) (Sotomayor, J., dissenting from denial of certiorari)), Respondent discusses the Supreme Court cases that dissent cites, seeming to concede it is settled law that a state court's factual omissions are relevant to the § (d)(2) inquiry. *See* Response at 57 n.20 (citing, *e.g.*, *Brumfield v. Cain*, 576 U.S. 305 (2015)). Though Respondent provides only *Brumfield*'s holding on the intellectual functioning prong of intellectual disability, *Brumfield* also found the state court relied upon unreasonable determinations of fact by "conclu[ding] that the record failed to raise any question as to Brumfield's impairment . . . in adaptive skills." 576 U.S. at 317. The Court went on to discuss at length the record facts the state court disregarded. *See id*. at 317-19.

Likewise, here, OCCA unreasonably determined the facts by concluding that "the record failed to raise any question," *Brumfield*, 576 U.S. at 317, as to intent. OCCA did not render its adjudication a reasonable application of *Beck*, or based upon reasonable determinations of fact, through a perfunctory reference to reviewing the record for evidence supporting a second-degree murder instruction. *But see*

---

prove that a decision is objectively unreasonable by clear and convincing evidence.").

Response at 58. Nor does another inapposite reference to *Grissom*, *see* Response at

58; *supra* Section I(C)(1), render that case parallel to Mr. Fuston's. Here, instead,

the almost-simultaneous nature of the acts of kicking in the door and shooting, a

salient fact OCCA unreasonably ignored, was one piece of evidence, offered by the

State at Mr. Fuston's trial, pointing to a depraved-mind murder. Due process of law

thus required Mr. Fuston's jury, not the trial judge, OCCA, or Respondent, to decide

which verdict best fit the crime.

## CONCLUSION

Mr. Fuston respectfully requests he be granted all relief to which he may be

entitled.


Respectfully submitted,

*s/ Callie Heller*
CALLIE HELLER, Texas Bar #24101897
Assistant Federal Public Defender
EMMA V. ROLLS, OBA #18820
First Assistant Federal Public Defender
Office of the Federal Public Defender
Western District of Oklahoma
215 Dean A. McGee Ave., Suite 707
Oklahoma City, OK 73102
(405) 609-5975 telephone
(405) 609-5976 facsimile
Callie_Heller@fd.org
Emma_Roll@fd.org

COUNSEL FOR PETITIONER/APPELLANT,
RONNIE EUGENE FUSTON

## CERTIFICATE OF DIGITAL SUBMISSION

I certify that with respect to the foregoing Appellant's Opening Brief that: (1) all required privacy redactions have been made pursuant 10th Cir. R. 25.5; (2) the hard copies submitted to the Court via ECF submission are exact copies of the version submitted electronically, and (3) the digital submissions have been scanned for viruses with the most recent version of a commercial virus scanning program, Symantec Endpoint Protection, Version 14.000.15.105, updated daily, and according to the program, is free of viruses.

*s/ Callie Heller*
CALLIE HELLER, Texas Bar #24101897
Assistant Federal Public Defender

## CERTIFICATE OF COMPLIANCE

1. ***Petitioner/Appellant's Reply Brief*** complies with the type-volume limitation of Fed. R. App. P. 32(g) because this brief contains 6,869 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. ***Petitioner/Appellant's Opening Brief*** complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft Word 2016 in 14-point Times New Roman font.

Dated November 3, 2025.

*s/ Callie Heller*
CALLIE HELLER, Texas Bar #24101897
Assistant Federal Public Defender

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 3rd day of November, 2025, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrant:

Michel A. Trapasso, Assistant Attorney General
Criminal Appeals Division
313 N.E. 21st Street
Service email: fhc.docket@oag.ok.gov
Michel.trapasso@oag.ok.gov

*s/ Callie Heller*
CALLIE HELLER, Texas Bar #24101897
Assistant Federal Public Defender
